IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| KINLOCH N. YELLOTT III, | ) ) |
| Defendant. | ) ) |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action under Section 104(e)(5) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9604(e)(5), for an Order in Aid of Access to property owned by Defendant Kinloch N. Yellott, III. The property at issue is approximately one acre in size consisting of two condemned commercial buildings, "west building" and "east building," located at 6624-6630 Quad Avenue, Baltimore, Maryland (the "Site"). The United States seeks such an Order to permit EPA to implement a cleanup action at the Site to remove hazardous substances under Section 104(a) of CERCLA, 42 U.S.C. § 9604(a).

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9604 and 9613(b).

3.  This Court has personal jurisdiction over the Defendant because the Defendant owns the one acre and two buildings that comprise the Site, which are located in this District.

4.  Venue is proper in this District because the Site is located within this District, and the claims arose in connection with releases or threatened releases of hazardous substances that have occurred in this District.  28 U.S.C. § 1391(b), (c); 42 U.S.C. § 9613(b).

## DEFENDANT

5.  The Defendant is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6.  The Defendant resides at 15201 Manor Road, Monkton, Maryland 21111-2418.

7.  The Defendant took ownership of the Site through a deed transfer from Ann Lux Benet Yellott and Ann Lux Yellott on May 8, 2012.

8.  On May 15, 2017, a tax sale for the property took place.  The Baltimore Bureau of Revenue Collections confirmed to EPA that the Defendant remains the owner until a foreclosure of right to redemption is filed with the Baltimore Circuit Court by the tax lien holder.

9.  On April 25, 2019, the City of Baltimore confirmed to EPA that no foreclosure of right to redemption has been filed with the Baltimore Circuit Court, and the Defendant is the property owner of record for the Site.

## STATUTORY BACKGROUND

10.  Congress enacted CERCLA in 1980 to provide the United States with a comprehensive mechanism for responding to releases and threatened releases of hazardous substances and funding the costs of cleanup actions.  *See* 42 U.S.C. §§ 9604(a), 9606(a), 9607(a).

11.  Section 104(a) of CERCLA authorizes the President to take action consistent with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Part 300, to

respond to the release or substantial threat of release of any hazardous substance into the environment.  42 U.S.C. § 9604(a).

12. A "release" is "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) . . . ."  42 U.S.C. § 9601(22).

13. "Hazardous substance" is defined as "elements, compounds, mixtures, solutions, and substances which, when released into the environment may present substantial danger to the public health or welfare or the environment . . . ."  42 U.S.C. § 9602(a).

14. Section 104(e) of CERCLA authorizes any officer, employee, or representative of the President to enter any facility, establishment, property, place, or location where there may be a release or threatened release of a hazardous substance to determine the need for a response or take a response action.  42 U.S.C. § 9604(e)(1), (e)(3).

15. If an officer, employee, or representative of the President requests entry under Section 104(e), and consent to enter is denied or conditioned in any manner, the President may ask the Attorney General to commence a civil action to compel compliance with the request for access.  42 U.S.C. § 9604(e)(5)(B); 40 C.F.R. § 300.400(d)(4)(i).

16. Where there is a reasonable basis to believe that there may be a release or threatened release of a hazardous substance, the Court shall enjoin interference with entry unless, under the circumstances of the case, the demand for entry is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."  42 U.S.C. § 9604(e)(5)(B)(i).

17. Executive Order No. 12580 delegates the President's authority to EPA under Section 104 of CERCLA, 42 U.S.C. § 9604.  52 Fed. Reg. 2923 (Jan. 23, 1987).

**GENERAL ALLEGATIONS**

18. The Site is an abandoned industrial facility located within a commercial/industrial area in Baltimore, Maryland. The Site bears Baltimore County, Maryland, parcel identification number 26-18-6235-018 and totals approximately one acre. The Site is bounded by commercial facilities to the east and west, a tributary to Herring Run to the north, and Quad Avenue to the south.

19. The Site is the location of a former chemical corporation, Haven Chemical Corporation, which was owned by the Defendant's family. Starting in 1979, Haven Chemical Corporation manufactured epoxy floor coatings at the Site.

20. From around October 2007 to about October 2012, Freestate Bio Fuels and Eagle Creek Fuel Services each leased a portion of the Site to produce bio-fuels.

21. Eagle Creek Fuel Services operated at the Site from October 2007 to October 2012.

22. Freestate Bio Fuels operated at the Site from October 2008 to July 2010.

23. The Site has been vacant for at least two years.

24. The Site currently contains, among other things, two run-down buildings each containing warehouse and office space. The two buildings are joined by a shared loading dock.

25. On May 2, 2018, investigators from the Baltimore City Department of Housing and Community Development, Special Investigations Unit (Baltimore City "DHCD-SIU") conducted a search at the Site pursuant to a search warrant due to concerns that hazardous chemicals were being stored on the property.

26. During the search, the City of Baltimore inspectors found the Site to be abandoned and open to casual entry. The Baltimore City Fire Department's Hazardous Materials

Response Team discovered that the two warehouses were full of hazardous chemicals that are highly flammable and combustible, posing a serious threat to the health, life, and safety of anyone in the immediate area.

27. Based on the findings from the inspection, the City of Baltimore determined the property to be unsafe, posted condemnation notices, and referred the matter to the Maryland Department of the Environment ("MDE") for further action.

28. On May 10, 2018, the MDE and the City of Baltimore requested EPA's assistance to address the potential threats posed by the large volume of hazardous substances at the Site. The Maryland officials provided copies of photographs taken at the Site of the labels on drums and containers identifying their contents of hazardous substances.

29. On May 23, 2018, the Baltimore City DHCD-SIU notified the EPA On-Scene Coordinator ("OSC") that the lock on the front gate of the Site had been cut and several vehicles that were stored at the Site had been removed. The investigator also observed that some containers were tipped over and contents were poured out leaving black stains on the ground in multiple areas.

30. On May 23, 2018, the OSC contacted the Defendant stating the urgency of assessing the property based on the email from the Baltimore City DHCD-SIU. The Defendant did not agree to provide consent for entry to the Site but agreed to meet the OSC at the Site on the following day to walk throughout the property, observe conditions at the Site, and discuss proposed assessment activities.

31. On May 24, 2018, representatives from MDE, Baltimore City DHCD-SIU, and EPA conducted a walkthrough of the Site with the Defendant. They observed overturned

containers, stains on the ground near the fence of the east side of the property, and other small and large containers and drums spread across the property and stacked in the loading dock areas.

32.     During the May 24, 2018, walkthrough, both buildings appeared to be run-down. Drums and containers were stored in areas where the roof was compromised and exposed to the weather.  There was no electricity in either building.  Inside the two buildings, the OSC observed numerous drums and containers, many of which were deteriorated, 55-gallon steel drums stacked two to three high, and drums labeled with National Fire Protection Association 704 labeling – which indicates hazardous materials.

33.     Based on observations during the May 24, 2018, Site visit and information obtained from the city and state, the OSC recommended a time-critical removal action occur at the Site.

34.     On June 21, 2018, EPA selected a response action for implementation at the Site under Section 104(a) of CERCLA, 42 U.S.C. § 9604(a).

35.     On June 21, 2018, the Director of EPA Region III Hazardous Site Cleanup Division signed an Action Memorandum approving funding and response actions for the Site. The response actions selected include, among other things, securing the Site against trespassers and vandalism of drums, tanks, totes, and other containers; stabilizing hazardous substances; addressing spills from leaking containers; characterizing and segregating all hazardous substances; and sampling and preparing containers and materials as needed for off-Site disposal.

36.     Between June 21, 2018, and the week of October 8, 2018, EPA requested that the Defendant provide consent to enter and conduct response actions at the Site on seven separate occasions. The Defendant failed to respond.

37.     On August 2, 2018, United States Magistrate Judge J. Mark Coulson of the United States District Court of Maryland executed an administrative warrant authorizing the performance of a limited response action to allow EPA to mitigate threats at the Site.  Attached as Exhibit 1 is a true and correct copy of the administrative warrant.

38.     From August 8, 2018, to November 16, 2018, EPA conducted a limited response action at the Site including, among other things, providing security; securing the buildings to make them safe for responders and protected from trespassers and weather; sampling contents of drums, containers, and totes; characterization and segregation of wastes; stabilization of leaking containers; cleaning up spills; staging drums and totes for removal and off-Site disposal; and overpacking degraded drums and those containing strong acids and bases.

39.     As of November 16, 2018, response actions in the administrative warrant have been completed.  On November 30, 2018, the administrative warrant granting EPA access to conduct limited response actions expired.

40.     As part of the response action in the administrative warrant, an unarmed security guard remains at the Site to limit trespass and human contact with the hazardous substances, pollutants, or contaminants at the Site.

41.     Based on information gathered during the response action, EPA concluded that the Site contains, among other things: over one thousand 55-gallon drums, including at least 200 drums whose contents are flammable and/or corrosive; at least 75 containers greater than 5-gallons, but less than 55-gallons, some of which have contents that are flammable and/or corrosive; five large facility storage tanks approximately 1,000 gallons in size containing an estimated 500 gallons of unknown liquids, whose contents are flammable; a 30-gallon container

7

labeled as containing 230 pounds of sulfuric acid; and at least three large bags labeled as containing sodium hydroxide.

42. Sampling results from the response action indicate that on-Site drums and containers contain multiple hazardous substances listed in 40 C.F.R. § 302.4, including methyl ethyl ketone (MEK), methyl isobutyl ketone (MIBK), dibutyl phthalate, sodium hydroxide, chromium, lead, xylene, isophorone, ethylbenzene, bis(2-ethylhexyl) phthalate, and tetrachloroethylene.

43. EPA determined that phase two of the response action is necessary to protect public health and safety because the release and/or threatened release of flammable and hazardous substances at the Site present a significant threat to public health or welfare or the environment. EPA based its determination on: (1) the volume and condition of the containers and other material on-Site; (2) the condition of the abandoned property; (3) the potential for trespass and vandalism; (4) the potential fire hazard which could facilitate the release of hazardous substances from drums, totes, and tanks, causing exposure to chemicals and fire to nearby commercial businesses and residential developments; and (5) the risk of runoff from firefighting water and the on-Site chemicals to the tributary to Herring Run.

44. Phase two of the response action primarily consists of transportation and off-Site disposal of hazardous substances in accordance with Section 121(d) of CERCLA and 40 C.F.R. §300.440. This entails, among other things, the final preparation of hazardous substances, other contaminated materials, and debris identified for removal and off-Site disposal; cleaning up any new spills from leaking containers; taking samples if needed; arranging for and conducting transportation for off-Site disposal; and conducting off-Site disposal of hazardous substances, pollutants, or contaminants.

45. During the week of October 8, 2018, the OSC made two separate attempts to obtain consent for entry from the Defendant and inform him about the response action.

46. On March 21, 2019, the United States sent the Defendant a second letter seeking consent to Site access to allow EPA to perform phase two of the response action. The United States requested a response by April 13, 2019.

47. As of the date of this Complaint, the United States has received no response from the Defendant to its requests for access to the Site to perform phase two of the response action.

## CLAIM FOR RELIEF

48. The United States re-alleges and incorporates by reference all of the preceding paragraphs.

49. The Defendant is the current owner of the Site.

50. The Site is a "vessel, facility, establishment, or other place or property where any hazardous substance or pollutant or contaminant may be or has been generated, stored, treated, disposed of, or transported from" within the meaning of 42 U.S.C. § 9604(e)(3)(A).

51. The Site is a "vessel, facility, establishment, or other place or property from which or to which a hazardous substance or pollutant or contaminant has been or may have been released" within the meaning of 42 U.S.C. § 9604(e)(3)(B).

52. The Site is a "vessel, facility, establishment, or other place or property where such release is or may be threatened" within the meaning of 42 U.S.C. § 9604(e)(3)(C).

53. The Site is a "vessel, facility, establishment, or other place or property where entry is needed to determine the need for response or the appropriate response or to effectuate a response action" under CERCLA Section 104 within the meaning of 42 U.S.C. § 9604(e)(3)(D).

54. EPA has a "reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant" under 42 U.S.C. § 9604(e)(1) because: (1) testing at the Site indicates hundreds of drums and containers have contents that are flammable and or combustive; (2) contain multiple hazardous substances, including methyl ethyl ketone (MEK), methyl isobutyl ketone (MIBK), dibutyl phthalate, sodium hydroxide, chromium, lead, xylene, isophorone, ethylbenzene, bis(2-ethylhexyl) phthalate, and tetrachloroethane; and (3) EPA determined that weather, trespass, and other events related to the conditions of the Site could cause a fire and a threat of a release of these highly flammable and corrosive substances.

55. EPA needs access to the Site to take the response action selected by EPA on June 21, 2018.

56. EPA sought the Defendant's consent to enter the Site to take a response action under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).

57. The Defendant did not grant consent.

58. The Defendant has interfered with entry to the Site within the meaning of CERCLA Section 104(e)(5)(B)(i), 42 U.S.C. § 9604(e)(5)(B)(i).

59. EPA's demand for entry to the Site is not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court:

A. Issue an Order directing Defendant and its agents, employees, or representatives to provide EPA and its officers, employees, or representatives with immediate, unimpeded entry and access to the Site, at reasonable times, to take the response action that EPA selected on June

21, 2018, and such additional or different response actions as EPA may select via a modification or amendment to the response action selected on June 21, 2018;

  B. Enjoin Defendant and its agents, employees, or representatives from obstructing, impeding, or otherwise interfering with entry and access to the Site, at reasonable times, by EPA and its officers, employees, or representatives for the purpose of taking the response action that EPA selected on June 21, 2018, and such additional or different response actions as EPA may select via a modification or amendment to the response action selected on June 21, 2018;

  C. Award the United States the costs of this action; and

  D. Grant such other and further relief as the Court deems just and appropriate.

          Respectfully submitted,

          ROBERT BROOK
          Assistant Section Chief
          Environmental Enforcement Section
          Environment and Natural Resources Division
          United States Department of Justice

          /s/ Samantha M. Ricci
          SAMANTHA M. RICCI
          California Bar No. 324517
          Trial Attorney
          Environmental Enforcement Section
          Environment and Natural Resources Division
          United States Department of Justice
          P.O. Box 7611
          Washington, D.C. 20044-7611
          Telephone: (202) 514-3856
          Email: Samantha.ricci@usdoj.gov

          ROBERT K. HUR
          United States Attorney
          District of Maryland

          /s/ Tarra Deshields
          TARRA DESHIELDS
          Maryland Bar No. 07749
          Assistant United States Attorney

                                        36 South Charles Street, 4th Floor
                                        Baltimore, MD 21201
                                        Telephone: (410) 209-4800
                                        Fax: (410) 962-9947
                                        Email: tarra.deshields@usdoj.gov

Of Counsel:

YVETTE HAMILTON
Sr. Assistant Regional Counsel
EPA Region III
Philadelphia, PA